UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RODRICK TIMOTHY ROBINSON,

        Plaintiff,

v.

UNKNOWN GROVER et al.,

        Defendants.
_____/

Case No. 2:21-cv-99

Honorable Jane M. Beckering

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full $402.00 filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hough, Lovett, Isom, Godfrey, Bourney, Hietric, Miller, Unknown Party #1, Unknown Party #2, Unknown Party #3, Unknown Party #4, and Unknown Party #5. The Court will also dismiss, for failure to state a claim, Plaintiff's claim for injunctive relief and his First Amendment retaliation claim against Defendant Grover. Plaintiff's claims regarding events at the Baraga Correctional Facility (AMF) will be dismissed without prejudice to Plaintiff's right to reassert

them in a new lawsuit should he choose to do so. Plaintiff's Eighth Amendment claim against Defendant Grover remains in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan and AMF in Baraga, Baraga County, Michigan. Plaintiff sues the following URF personnel: Warden Unknown Party #4, Deputy Warden Unknown Party #3, Classification Director Unknown Party #2, Transfer Coordinator Unknown Party #5, Inspector Unknown Party #1, Prison Counselor Unknown Hietric, Sergeant/Prison Rape Elimination Act (PREA) Coordinator Unknown Miller, Officer Unknown Bourney, Food Service Director Unknown Lovett, and Food Service Workers Unknown Grover, Unknown Hough, Unknown Isom, and Unknown Godfrey.

Plaintiff alleges that while incarcerated at URF, he was assigned to work in the food service department. (ECF No. 1, PageID.6.) On July 13, 2020, Plaintiff was using the bathroom in the food service department when he heard someone yell "Simpson." (*Id.*) Plaintiff looked toward the direction of the voice and recognized Defendant Grover. (*Id.*) Defendant Grover "immediately appeared in front of [Plaintiff] while [he] was nude and still using the toilet." (*Id.*) Defendant Grover 'tore down the 'make-shift' door" and asked if Plaintiff was Simpson. (*Id.*) Plaintiff responded that he was not, and Defendant Grover ordered him to stand up. (*Id.*) Plaintiff complied, and Defendant Grover stated, "The stereotype isn't true, you got a big butt though." (*Id.*) Defendant Grover then grabbed Plaintiff's penis and testicles and fondled them before leaving the restroom.

2

(*Id.*, PageID.6–7.) Plaintiff claims there were at least three other inmates in the restroom when this occurred. (*Id.*, PageID.7.)

Plaintiff "pull[ed] [himself] together emotionally" and went to confront Defendant Grover. (*Id.*) Defendant Grover was talking to Defendant Hough. (*Id.*) Plaintiff confronted Defendant Grover, "demanding to know why he had violated [Plaintiff] sexually." (*Id.*) Defendant Grover laughed and told Plaintiff to "stop being a cry baby," and Defendant Hough also laughed. (*Id.*) Plaintiff continued "to ask for answers and [Defendants Grover and Hough] both told [him] that [he could] either get back to work or they [would] send [his] 'ass' to segregation." (*Id.*) Plaintiff complied and got back to work. (*Id.*, PageID.8.)

At the end of his shift, Plaintiff told Defendants Hough, Isom, Lovett, and Godfrey that he did not feel safe at work because of the sexual assault by Defendant Grover. (*Id.*) Plaintiff stated that he wanted to "quit the job." (*Id.*) Each of those Defendants told Plaintiff that he could not quit or he would be punished and his parole date would be affected. (*Id.*) Plaintiff returned to his cell and submitted a PREA complaint. (*Id.*)

On July 14, 2020, Defendant Bourney summoned Plaintiff to the officers' desk and told him to go to work. (*Id.*) Plaintiff told him about the sexual assault, and Defendant Bourney responded, "Take your ass to work or I'll send you to segregation." (*Id.*) Plaintiff responded that he would go to work, but immediately went to Defendant Hietric's office. (*Id.*) He informed Defendant Hietric of the sexual assault and how he wanted to quit work. (*Id.*, PageID.9.) Plaintiff told her that he was "being forced to continue to work in a very dangerous environment." (*Id.*) Defendant Hietric responded, "I ain't getting in the middle of that, I don't got nothing for ya. Leave my office." (*Id.*) Plaintiff reported to work and told Defendants Lovett and Hough that he refused to work "in this dangerous environment." (*Id.*) Plaintiff was then restricted to his cell. (*Id.*)

3

On July 22, 2020, Plaintiff was placed on "00" status without a hearing by Defendant Unknown Party #2. (*Id.*) On July 25, 2020, Defendants Miller and Unknown Party #1 interviewed Plaintiff regarding his PREA complaint. (*Id.*) During the interview, Plaintiff was shown "approximately five different sexual complaints filed on [Defendant] Grover before [he] filed [his] complaint." (*Id.*) Plaintiff was told the situation would be investigated. (*Id.*)

Plaintiff requested mental health assistance on August 3, 2020. (*Id.*) He was seen by mental health staff on August 14, 2020. (*Id.*, PageID.10.) During that appointment, Plaintiff "was told [his] sexual assault complaint was looked into, but the record of [his] complaint [did] not exist." (*Id.*) The mental health employee also told Plaintiff that "all sexual assault complaints must come through [the] mental services department first for immediate evaluation, and there was no record of [Plaintiff] reporting a sexual assault." (*Id.*)

Plaintiff submitted kites to Defendants Unknown Parties #3 and #4 "requesting help and making them aware of a potential cover-up." (*Id.*) He also submitted grievances against Defendants Lovett, Isom, Godfrey, and Hough "for the gross negligence resulting in [Plaintiff] being sexually assaulted." (*Id.*) Plaintiff also filed grievances against Defendants Miller and Unknown Party #1 for failing to act upon the prior complaints against Defendant Grover. (*Id.*)

Plaintiff claims that, daily, he received "verbal threats and promises that [he would] be missing, beaten up, raped, transferred to a very bad place, and put in segregation if [he] didn't stop complaining." (*Id.*) He avers that he is scheduled to be released on December 21, 2022, and has certain "obligations outlined by the Parole Board that [he] must accomplish in order to ensure" that he is released on that date. (*Id.*, PageID.11.) Such obligations include vocational training, self-help courses, and maintaining a low security level. (*Id.*) Plaintiff claims that URF "is a level 2 security prison with all the classes [he is] required to complete." (*Id.*)

On September 14, 2020, Plaintiff was transferred to AMF, a level 5 security facility. (*Id.*) Plaintiff claims that he did not receive any misconducts or such that would "warrant the raise in [his] security custody." (*Id.*) He avers that his security level actually decreased because he was a "level 1 custody prisoner in a level 5 custody prison." (*Id.*) Plaintiff claims that the transfer "halted and drastically slowed numerous legal [matters he is] involved in." (*Id.*) Moreover, he was kept in administrative segregation from September 14, 2020, through May 6, 2021. (*Id.*) That placement restricted his access to the law library, which he required to conduct research for his actual innocence claim. (*Id.*) Plaintiff alleges that in October 2020, the integrity unit in Wayne County, Michigan opened his case for investigation of innocence. (*Id.*) He claims, however, that his placement at AMF hindered his ability to provide that unit information and assistance with his case. (*Id.*) Plaintiff avers that Defendants Unknown Parties #3, #4, and #5 were responsible for his transfer. (*Id.*, PageID.15–16.)

Based on the foregoing, the Court construes Plaintiff's complaint to assert claims regarding alleged violations of his First, Eighth, and Fourteenth Amendment rights. Plaintiff seeks injunctive relief in the form of a transfer to his "correct and true security level." (*Id.*, PageID.18.) He also seeks an unspecified amount of compensatory and punitive damages, as well as "full employment disciplinary sanctions against all [D]efendants." (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

5

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Claims Regarding Events at AMF**

As noted above, Plaintiff avers that he was kept in administrative segregation at AMF and that such placement affected his ability to access the law library. (ECF No. 1, PageID.11–12.) He suggests that he required access to the law library to assist with his innocence claim. (*Id.*, PageID.12.) Plaintiff, however, does not allege any facts to suggest that any of the Defendants, who are all employed at URF, had any active involvement in such actions. Accordingly, any claims

6

Plaintiff asserts about events that occurred at AMF will be dismissed without prejudice to Plaintiff's right to reassert them in a new lawsuit should he choose to do so.

### B. Claim for Injunctive Relief

As noted *supra*, Plaintiff seeks injunctive relief in the form of a transfer to his "correct and true security level." (*Id.*, PageID.18.) Plaintiff, however, is no longer confined at URF, where he avers Defendants are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Plaintiff is now incarcerated at MTU, and Defendants are not employed at that facility. Moreover, he is not held at a security level that is higher than his URF level.[1] Plaintiff, therefore, cannot maintain his claim for injunctive relief against Defendants.

### C. Eighth Amendment Claims

#### 1. Defendant Grover

Plaintiff contends that Defendant Grover violated his Eighth Amendment rights by sexually assaulting him. (ECF No. 1, PageID.13.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832

---

[1] In the MDOC, security classifications, from least to most secure, are as follows: Levels I, II, IV, V, and administrative segregation. MDOC Policy Directive 05.01.130 ¶ B (Oct. 10, 2011). URF houses security levels I, II, and IV. *See* https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5161--,00.html (last visited Mar. 28, 2022). AMF houses security levels I and V. *See* https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5325--,00.html (last visited Mar. 28, 2022). MTU, where Plaintiff is presently held, houses security level II. *See* https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5367--,00.html (last visited Mar. 28, 2022).

F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*,

76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards), *abrogated in part on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

Here, Plaintiff alleges that he was using the bathroom when Defendant Grover ordered him to stand, causing his nude body to be fully exposed. (ECF No. 1, PageID.6.) Defendant Grover then stated, "The stereotype isn't true, you got a big butt though." (*Id.*) Defendant Grover then reached out and "grabbed [Plaintiff's] penis and testicles, fondling them." (*Id.*) At this stage of the proceedings, the Court concludes that Plaintiff has sufficiently set forth an Eighth Amendment claim against Defendant Grover.

9

### 2. Defendants Hough, Isom, Godfrey, Lovett, Bourney, and Hietric

Plaintiff appears to suggest that Defendants Hough, Isom, Godfrey, Lovett, Bourney, and Hietric violated his Eighth Amendment rights by failing to control Defendant Grover and by failing to investigate the incident. (ECF No. 1, PageID.13–14.) In *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999), the Sixth Circuit Court of Appeals explained the narrow scope of an official's liability for the conduct of an offending employee:

> This court has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees. *See Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982). Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. Here, the district court found that Crosley, Hambrick, Henry, Miner and Luttrell knew of the alleged violations against Shehee, but failed to act when the situation was in their control. The district court held that this failure to act constituted an acquiescence in the unconstitutional conduct. We disagree with that conclusion.
>
> In *Poe v. Haydon*, 853 F.2d 418 (6th Cir.1988), this court held that a state employee's claims of sexual harassment under § 1983 could not be sustained against the supervisors of the offending employees. *See id.* at 429. We stated that:
>
>> Even assuming the allegations in [plaintiff's] complaint are true, she has not averred that any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment. . . . At best, she has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983.
>
> *Id*. (internal quotations and citations omitted). Thus, liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), *cert. denied*, 526 U.S. 1115, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999).

*Shehee*, 199 F.3d at 300. Plaintiff likewise has failed to allege direct participation, encouragement, authorization, or acquiescence in Defendant Grover's sexual assault.

10

Plaintiff also appears to suggest that these Defendants failed to protect him from Defendant Grover by forcing him to continue working in food service. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop*, 636 F.3d at 766–67; *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

There is no doubt from Plaintiff's complaint that he made Defendants Hough, Isom, Godfrey, Lovett, Bourney, and Hiedric aware of the incident that occurred with Defendant Grover. However, nothing in the complaint plausibly suggests that these Defendants were aware that the sexual assault would occur and failed to protect Plaintiff from it. Plaintiff vaguely suggests that Defendant Lovett, as the food service director, "knew or should have known of [Defendant] Grover's multiple reports of inappropriate sexual behavior." (ECF No. 1, PageID.13.) Such a conclusory allegation, however, is insufficient to impart actual knowledge to Defendant Lovett.

11

Indeed, Plaintiff's allegation that Lovett "should have known" suggests a state of mind consistent with negligence, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011) ("a negligent defendant is one who should have known of a similar risk but, in fact, did not . . . ."), not deliberate indifference, *Farmer*, 511 U.S. at 835 (stating "deliberate indifference describes a state of mind more blameworthy than negligence.").

Nothing in the complaint as pleaded permits the Court to conclude that Defendants Hough, Isom, Godfrey, Lovett, Bourney, and Hiedric were aware of and consciously disregarded an excessive risk to Plaintiff's safety posed by Defendant Grover. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Consequently, Plaintiff's Eighth Amendment claims against them will be dismissed.

### 3. Defendants Miller and Unknown Party #1

Plaintiff also appears to suggest that Defendants Miller and Unknown Party #1 failed to protect him from Defendant Grover by not stopping his actions "after the first report of sexual assault." (ECF No. 1, PageID.14.) In support of his claim, Plaintiff avers that during his interview by Defendants Miller and Unknown Party #1, he was "shown approximately five different sexual complaints filed on [Defendant] Grover before [Plaintiff] filed [his] complaint." (*Id.*, PageID.9.) While Plaintiff was shown those complaints by Defendants Miller and Unknown Party #1, his complaint is devoid of facts from which the Court could infer that they were actually aware of such complaints prior to Plaintiff's assault by Defendant Grover. Plaintiff provides no facts as to when such complaints were made and whether Defendants Miller and Unknown Party #1 were the recipients of such complaints when made. Nothing in the complaint as pleaded permits the Court to conclude that Defendants Miller and Unknown Party #1 were aware of and consciously disregarded an excessive risk to Plaintiff's safety posed by Defendant Grover. *See Farmer*, 511

U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Consequently, Plaintiff's Eighth Amendment claims against them will be dismissed.

A liberal reading of Plaintiff's complaint leads the Court to conclude that Plaintiff is asserting that Defendants Miller and Unknown Party failed to comply with the PREA by adequately investigating the situation. Plaintiff, however, "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.") (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D. N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.") (quoting *Amaker v. Fischer*, No. 10-CV-0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Accordingly, to the extent Plaintiff asserts claims under the PREA against Defendants Miller and Unknown Party #1, such claims will be dismissed.

      **D.**    **Fourteenth Amendment Due Process Claim**

The Court's liberal reading of Plaintiff's complaint leads the Court to conclude that he is asserting a Fourteenth Amendment due process claim against Defendant Unknown Party #2 for classifying him as "00" status, meaning that Plaintiff was unemployable, without holding a hearing. MDOC policy calls for reclassification of a prisoner as "unemployable" when a prisoner refuses to fully and actively participate in a work assignment. MDOC Policy Directive 05.01.100,

13

¶ BB (eff. Dec. 2, 2019). A prisoner reclassified as unemployable is subject to limits on leisure time activities. *Id*. ¶ DD. Moreover, an unauthorized absence from a work assignment may result in disciplinary action. MDOC Policy Directive 05.02.110, ¶ KK (eff. Oct. 5, 2020).

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Plaintiff, however, does not have a liberty or property interest in prison employment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989) (discussing that there is no constitutional right to prison employment); *Ivey,* 832 F.2d at 955 ("[N]o prisoner has a constitutional right to a particular job or to any job."); *Argue v. Hofmeyer,* 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). In addition, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir.1989)). The Sixth Circuit has also held that a prisoner's confinement to his cell on weekdays while other prisoners worked did not constitute an atypical or significant hardship. *Ingram v. Harry*, 97 F. App'x 20, 21 (6th Cir. 2004). Plaintiff, therefore, cannot maintain a due process claim based upon his unemployment and classification as "00 status." Accordingly, Plaintiff's Fourteenth Amendment due process claim will be dismissed.

### E. First Amendment Retaliation Claims

Plaintiff suggests that Defendants Grover, Hough, and Bourney retaliated against him for complaining about Defendant Grover's assault by telling him that if he did not work, he would be sent to segregation. He also avers that Defendants Hough, Isom, Lovett, and Godfrey told him that he would be punished and his release date would be affected if he quit his job. Finally, Plaintiff suggests that Defendant Unknown Party #2 retaliated against him by classifying him as "00" status, and that Defendants Unknown Parties #3, 4, and #5 retaliated against him by transferring him to a higher security facility.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

#### 1. Protected Conduct

In his complaint, Plaintiff contends that he filed a PREA complaint, orally complained about Defendant Grover's behavior, and submitted kites and grievances. Plaintiff submitted the PREA complaint about Defendant Grover's behavior and, presumably, gave it to Defendant Miller. Plaintiff wrote kites to Defendants Unknow Parties #3 and 4. He filed grievances against Defendants Lovett, Isom, Godfrey, Hough, Miller, and Unknown Party #1.

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben*, 887 F.3d at 265; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity) (finding that a conversation constituted protected petitioning activity). Thus, Plaintiff's filing of grievances and raising oral complaints adequately constitutes protected conduct.

Plaintiff also suggests that Defendants Grover, Hough, Isom, Lovett, Godfrey, and Bourney threatened him with placement in segregation if he did not work after he complained about Defendant Grover's conduct. Moreover, he avers that Defendant Unknown Party #2 placed him on "00" status in retaliation for Plaintiff "exercising [his] right to be free from cruel and unusual punishment." (ECF No. 1, PageID.15.) Plaintiff, however, was not threatened with segregation for complaining about Defendant Grover's conduct. Nor was he placed on "00" status for complaining about such conduct. Instead, Plaintiff was threatened with segregation if he disobeyed direct orders to work. Moreover, Plaintiff refused to continue working and thereafter was placed on "00" status. Refusing to work after being directed to do so is not protected conduct because such behavior falls under disobeying a direct order, which is a Class II misconduct. *See*

MDOC Policy Directive 03.03.105, Attach. B (eff. July 1, 2018); *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017) (holding that an inmate's name-calling of guards (calling them unprofessional) was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases); *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 858, 864 (5th Cir. 2004) (concluding that an inmate who accused a chaplain of theological errors during a religious service had engaged in an unprotected challenge to institutional authority). Plaintiff, therefore, cannot maintain his retaliation claims against Defendants Grover, Hough, Isom, Lovett, Godfrey, Bourney, and Unknown Party #2.

### 2. Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff suggests that Defendants Unknown Parties #3, 4, and 5 transferred him to AMF in retaliation for Plaintiff's complaints and grievances about Defendant Grover's assault.[2] Ordinarily, transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). "Since prisoners are

---

[2] While Plaintiff avers that he filed grievances against Defendants Lovett, Isom, Godfrey, Hough, Grover, Miller, and Unknown Party #1, Plaintiff's complaint is devoid of any allegations suggesting that they engaged in any adverse action against him after the filing of those grievances.

17

expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the court held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. The *Hill* court determined that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El*, in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts.

Here, Plaintiff vaguely suggests that before his transfer, he was "getting 18 hours of out of cell activities" and that after the transfer, he had "1 hour and 15 minutes of out of cell activities a day." (ECF No. 1, PageID.15.) He also states that he was placed in administrative segregation at AMF. (*Id.*, PageID.12.) Plaintiff, however, indicates that he was placed on "00" status and restricted to his cell prior to the transfer. (*Id.*, PageID.9.) This Court has previously noted that placement on "00" status results in a prisoner being "restricted to his room from 2:00 p.m. to 10:00 p.m., seven days a week[,] and [losing] all privileges during those hours." *Board v. Weston*, No. 2:19-cv-151, 2019 WL 3955678, at *1 (W.D. Mich. Aug. 22, 2019). Given these restrictive conditions which Plaintiff was subject to at URF, it does not appear that Plaintiff's transfer to AMF and subsequent placement in administrative segregation rises to the level of adverse action. Nevertheless, even if the Court concluded that Plaintiff's transfer rises to the level of adverse action, he fails to set forth plausible retaliation claims against Defendants Unknown Parties #3, 4, and 5 for the reasons set forth below.

### 3.    **Retaliatory Motive**

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

18

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (discussing that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff merely alleges the ultimate fact of retaliation in this action. While he alleges that he sent kites to Defendants Unknown Parties #3 and 4 regarding Defendant Grover's assault, nothing in the complaint suggests that those Defendants received the kites and were actually aware of the incident. Moreover, Plaintiff simply alleges that this is a "classic retaliation action" and presents no facts whatsoever to support his conclusion that Defendants Unknown Parties #3, 4, and 5 transferred him in retaliation for his complaints and grievances. Accordingly, he fails to state plausible First Amendment retaliation claims against Defendants Unknown Parties #3, 4, and 5. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Hough, Lovett, Isom, Godfrey, Bourney, Hietric, Miller, Unknown Party #1, Unknown Party #2, Unknown Party #3, Unknown Party #4, and Unknown Party #5 will

be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's claim for injunctive relief and his First Amendment retaliation claim against Defendant Grover. Plaintiff's claims regarding events at the Baraga Correctional Facility (AMF) will be dismissed without prejudice to Plaintiff's right to reassert them in a new lawsuit should he choose to do so. Plaintiff's Eighth Amendment claim against Defendant Grover remains.

An order consistent with this opinion will be entered.


Dated: March 31, 2022        /s/ Jane M. Beckering
                             Jane M. Beckering
                             United States District Judge